GEORGE AJOOTIAN *vs.* PROVIDENCE REDEVELOPMENT AGENCY OF THE CITY OF PROVIDENCE *et al.*

AUGUST 11, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This bill in equity was brought by the complainant, as owner of certain real estate in the city of Providence, against said city, a municipal corporation, and against the Providence Redevelopment Agency, a corporation, hereinafter referred to as the agency. The bill, which contains a prayer for injunctive relief, was answered by the respondents. When the cause came before the superior court for hearing the parties raised certain constitutional

questions of doubt and importance affecting the case which thereupon were certified to this court for determination under the provisions of general laws 1938, chapter 545, §6, as amended by public laws 1940, chap. 941, sec. 2.

Among other things it appears from the pleadings that the complainant is the owner in fee simple of a parcel of real estate consisting of a two-family dwelling house and two lots of land on South street in Providence; that respondents had taken the necessary steps under the provisions of P. L. 1950, chap. 2574, known as the "Slum clearance and redevelopment act," hereinafter termed the act, for the agency to acquire under its power of eminent domain or otherwise all property within a certain area known as the *Point Street Project Area D2-R* which area had been found and determined by the proper authority and in the proper manner to be a *slum blighted area* within the meaning of section 2 (A) and 7 (A) of the act; that it is the purpose of the agency, in pursuance of its redevelopment plan for said area, to clear all structures except five from the acquired land, to widen certain streets, and thereafter under the powers given the agency by the act, to sell or lease the improved land for heavy, commercial and general industrial purposes; and that the complainant's real estate is located within the boundaries of the above-described Point Street Project Area D2-R. The complainant's bill alleges that he is in imminent danger of having his property taken from him without his consent or approval and therefore asks that the respondents be enjoined from further proceeding with their plans under chap. 2574.

As to the said project area, it also appears from the pleadings that, excluding streets, 46 per cent of the land is used for industrial or commercial purposes; that the streets are narrow and congested; that of the 125 dwelling units, which are contained in 49 structures and are occupied by about 400 people, 110 have ben surveyed; that 84 per cent of these were built before 1900; that 71 per cent have no central heating; that 63 per cent have no inside hot

water; that 62 per cent have no private bath; that 97 per cent are inadequate because of hazardous and unsanitary conditions; that 85 per cent have serious deterioration; and that all dwellings are predominantly of wood construction, built close together and constitute fire hazards. It is further alleged that because of such conditions, the incidence of juvenile delinquency, aid to dependent children, tuberculosis and other diseases are disproportionately high.

The act went into effect April 25, 1950. It contains many sections, makes certain legislative findings, defines terms used in the act, deals with various problems and conditions relative to different types of blighted areas, and the manner and procedure to be followed in acquiring and removing structures and financing the redevelopment of such areas. One of the legislative findings appearing in sec. 2 (A) reads as follows:

"It is hereby found and declared that there exist in many communities in this state

(1) Slum blighted areas (as hereinafter defined) that constitute a serious and growing menace and are injurious and inimical to the public health, safety and welfare of the people of the state generally; (2) that such areas present difficulties and handicaps which are beyond remedy and control solely by regulatory process in the exercise of the police power; (3) that they contribute substantially and increasingly to the problems of, and necessitate excessive and disproportionate expenditures for, crime prevention, correction, prosecution and punishment, the treatment of juvenile delinquency, the preservation of the public health and safety and the maintaining of adequate police, fire, and accident protection and other public services and facilities; (4) that this menace is becoming increasingly direct and substantial in its significance and effect; and (5) that the benefits which will result from the remedying of these conditions will accrue to the inhabitants and property owners of the communities in which they exist and to the inhabitants of this state generally."

Excluding all consideration of arrested blighted areas as defined in sec. 7 (B), the slum blighted area with which we are solely concerned in the instant case is defined in sec. 7 (A) of the act as follows:

" 'Slum blighted area' means any area in which there is a predominance of buildings or improvements, either used or intended to be used for living, commercial, industrial or other purposes, or any combination of such uses, which by reason of (1) dilapidation, deterioration, age or obsolescence, (2) inadequate provision for ventilation, light, sanitation, open spaces and recreation facilities, (3) high density of population and overcrowding, (4) defective design or insanitary or unsafe character or condition of physical construction, (5) defective or inadequate street and lot layout, (6) mixed character or shifting of uses to which they are put, or any combination of such factors and characteristics, are conducive to ill health, transmission of disease, infant mortality, juvenile delinquency and crime, injuriously affect the entire area and constitute a menace to the public health, safety and welfare of the inhabitants of the community and of the state generally. A slum blighted area need not be restricted to, or consist entirely of, lands, buildings, or improvements which of themselves are detrimental or inimical to the public health, safety or welfare, but may consist of an area in which such conditions predominate and injuriously affect the entire area."

It is also specifically provided by sec. 87 of the act that public laws 1946, chap. 1802, known as the "Community redevelopment act" and the acts in amendment thereof are repealed provided, however,

"that such repeal shall not affect the existence or continuance of any redevelopment agency, created in a community by such chapter or chapters, which heretofore has been authorized to transact business and exercise powers thereunder. Any such redevelopment agency shall be and constitute the redevelopment agency for such community within the meaning of this act and shall have all of the rights, powers, duties, and

exemptions provided for a redevelopment agency hereunder, and, notwithstanding any other provision of this act, no other redevelopment agency shall be created for such community. * * *

, All ordinances, resolutions, official acts and determinations and all other actions and proceedings heretofore taken or purporting to have been taken under and pursuant to chapter 1802 of the public laws of 1946, as amended, by the city of Providence, by the Providence Redevelopment Agency * * * or by any other community or redevelopment agency are hereby ratified, confirmed, and declared legal in all respects and shall continue in effect under the provisions of this act. The creation, establishment, and organization of the Providence Redevelopment Agency * * * and any other redevelopment agency authorized, or purporting to have been authorized, to transact business and exercise powers under chapter 1802 of the public laws of 1946, as amended, are hereby ratified, confirmed, and declared legal in all respects."

Under the pleadings herein no issue of fact is raised. It is admitted by the parties that all necessary preliminary steps, including the passing by the city of proper ordinances and resolutions and the holding of required hearings, have been duly and correctly taken so that the respondents, if they desire, are prima facie authorized to acquire title to the realty in the area in question either by purchase or by the exercise of the power of eminent domain.

The questions as framed and certified to us as questions of doubt and importance in this case are comprehensive. Apparently they attempt to cover the constitutionality of all parts of the act. But on such a certification our duty is to test the constitutionality of the act only insofar as the questions asked relate to the disposition of the actual case presently before the court. In *Blais* v. *Franklin,* 30 R. I. 413, at page 421, the court stated: "Although the statute provides that the Superior Court shall forthwith certify the question to this court for hearing and determination whenever the constitutionality of any act is brought in

question upon the record, we do not consider it to be the intent of the legislature that this court shall pass upon the question of the constitutionality of an act of the General Assembly that is not germane to the case in which it is raised, or in a case which is clearly without standing in court, or when the determination of the question is entirely unnecessary." In *First National Stores, Inc.* v. *Lewis,* 51 R. I. 448, at page 451, the court cited *Sackett* v. *Paine,* 46 R. I. 439, and *Wells* v. *Perry,* 50 R. I. 427, stating: "These cases are authority for the position that we now take that we are not bound to immediately consider all constitutional questions certified to this court regardless of the state of the record but may make such disposition of the same as the circumstances may require."

As already indicated, the constitutional questions framed by the parties go far beyond the necessities of the instant case and, in effect, ask us to pass on the constitutionality of the entire act, which in the circumstances we are not required to do. We will therefore reframe those questions so that in reality they will be questions of doubt and importance applicable solely to the circumstances of the litigated case at bar, which concerns only the redevelopment plan in "the slum blighted area known as Point Street Project Area D2-R." Thus reframed and limited, the questions are in substance as follows:

Are the pertinent provisions of P. L. 1950, chap. 2574, in so far as they apply exclusively to the slum blighted area of the above-mentioned project unconstitutional and void because

(1) article 8, sec. 48(d) and article 12, sec. 73 authorize the agency to exercise the power of eminent domain for private purposes and not for public uses and purposes in violation of article I, sec. 16, and amendment 9, section 1, of the constitution of Rhode Island, and article XIV, section 1, of the amendments to the constitution of the United States;

(2) sections 44, 49, 51, 74 and 84 are inconsistent with the fundamental principle of constitutional law

that moneys raised by taxation or by the issuance of general obligation bonds of a city may be used only for public and not for private purposes;

(3) sections 48(d) and 81 authorize the sale or lease of the redeveloped area in violation of article I, sec. 2, of the constitution of Rhode Island; and

(4) sections 48 and 81 contain an improper delegation of legislative authority to the agency in violation of article III of the constitution of Rhode Island in that the standards set forth are insufficient for a proper determination of the fair value for sale or lease of the slum blighted area after development.

The first question challenges the constitutionality of article 8, sec. 48(d), and article 12, sec. 73, of the act. Section 48 provides generally that each agency shall constitute a public body, corporate and politic, exercising essential governmental functions. Paragraph (d) thereof provides that for purposes of redevelopment within the redevelopment area each agency shall have many specifically described powers relating to the acquiring of real and personal property, including among others the right to acquire by eminent domain any real property, to clear all structures from the property so acquired, to sell, lease, exchange, subdivide, encumber or otherwise dispose of any real or personal property thereon at its fair value for uses in accordance with the redevelopment plan, irrespective of the cost of acquiring and preparing real property for redevelopment, and to insure, rent, maintain, manage, operate, repair and clear such property.

Section 73 restates in substance that each agency shall have the right to acquire by eminent domain real property or any interest therein within the project area whenever it shall be judged by the agency that the acquisition of the land is in the public interest and necessary for the public use. It further provides that the necessity for such acquisition shall be conclusively presumed upon the adoption by the agency of a resolution declaring the existence of the

above facts, and that the land is included in an approved project under the act.

The articles and sections of the state and federal constitutions mentioned in the first question and alleged to have been violated are substantially to the following effect. Article I, sec. 16, of the constitution of this state provides that "Private property shall not be taken for public uses, without just compensation." Section 1 of article IX of the articles of amendments to such constitution deals wih the power of the general assembly to provide for the creation and control of corporations, provided, however, that no corporation shall be created with the power to exercise the right of eminent domain except by special act. Section 1 of article XIV of the constitution of the United States provides in part that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

Recently the justices of this court were requested by the governor of the state to give advisory opinions respecting certain constitutional questions concerning public laws 1946, chapter 1802, as amended, known as the "Community redevelopment act." Such opinions are reported in *Opinion to the Governor*, 76 R. I. 249. The questions then asked covered substantially the same ground as the certified questions of doubt and importance now before us, particularly in relation to the exercise of the power of eminent domain by the agency in connection with carrying out redevelopment plans, and also as to whether the exercise of such power was for private purposes or for public uses and purposes. Although the present act in form repealed the previous act, nevertheless the established agencies and any steps taken by them in connection with redevelopment projects were expressly kept alive. The two acts, which are basically and fundamentally similar, express in general

the same legislative intent. The changes and additions appearing in the act now before us relate chiefly to matters of detail and definition.

In considering the questions asked in *Opinion to the Governor, supra,* Mr. Justice Capotosto and the writer hereof rendered a joint opinion wherein they discussed fully the fundamental issue of whether the acquiring of real estate by an agency through the exercise of the power of eminent domain in order to eliminate blighted areas in the nature of slums in the interest of the public health, safety and welfare was for a public use, and that question was answered in the affirmative. In our judgment the reasoning which led to that conclusion and which is set out at length in the above joint opinion, to which reference is made for a complete discussion of the subject, applies equally to the first question of doubt and importance now before us involving, as hereinbefore explained, *a slum blighted area under secs. 2 (A) and 7 (A) of the act* for which a redevelopment project is pending.

Apparently the authorities are in conflict as to how far the terms public use and public purpose should be applied in circumstances which involve an attempt to take private property by eminent domain. The older cases tend to give a limited and narrow construction to the above terms, while the more recent cases construe such terms with greater liberality. In the instant case a majority of the court adopts the latter point of view. The following cases dealing with redevelopment problems, in so far as applicable and pertinent to a slum blighted area under secs. 2 (A) and 7 (A) of the act as here, are added to the authorities cited in *Opinion to the Governor, supra,* as supporting the views therein expressed. *Chicago Land Clearance Comm'n* v. *White,* 411 Ill. 310, 104 N. E. 2d 236; *Opinion of the Justices,* 254 Ala. 343; *Nashville Housing Authority* v. *City of Nashville,* 192 Tenn. 103; *In re Slum Clearance in City of Detroit,* 331 Mich. 714; *Schenck* v. *Pittsburgh,* 364 Pa. 31.

Furthermore, in *Opinion to the Governor, supra,* it was

determined that the intent of section 1 of article IX of the amendments to the constitution of this state was to impose more, stringent limitations upon the legislature in the matter of granting the power of eminent domain to *private* corporations. We note that in the case at bar the agency is defined in the act as a *public body,* corporate and politic, exercising public and essential governmental functions, which makes the amendment to the state constitution under consideration inapplicable in the circumstances.

It is therefore our opinion that article 8, sec. 48(d), and article 12, sec. 73, of P. L. 1950, chap. 2574, are not unconstitutional, void, inconsistent with and in violation of the specific sections of the constitution of this state and of the United States mentioned in the first certified question of doubt and importance as limited by us.

The second question is directed to the constitutionality of secs. 44, 49, 51, 74 and 84, of the act. Our answer to that question is that the provisions of those sections are constitutional. We have already decided that in the circumstances involved in the instant case the exercise by the agency of the power of eminent domain in a slum blighted area under secs. 2 (A) and 7 (A) of the act is for a public and not a private use and purpose. Therefore public moneys can properly be used in carrying out a redevelopment under an accepted and approved plan in accordance with such provisions of the act. Different angles of this question were also discussed at some length in *Opinion to the Governor, supra,* and what is therein set out applies, in our judgment, fully to the facts appearing in the present case.

The third question, which attacks the constitutionality of secs. 48(d) and 81 of the act, concerns the power of the agency to sell or lease land acquired for the purpose of carrying out the redevelopment project described herein at the fair value for uses as determined by the agency. In support of the claim that the grant of such power is unconstitutional, it is argued that the value fixed by the

agency for the sale or lease of the land may be less than the cost of acquiring and preparing said land for redevelopment, thus conferring special privileges upon the purchasers or lessees thereof.

The portion of the state constitution involved relates to the fair distribution of the burden of the state among its citizens. In our opinion it is not a valid objection to the constitutionality of the act as raised by the question submitted that after a slum blighted area under secs. 2 (A) and 7 (A) has been cleared, the agency may convey to private interests the property so reclaimed with conditions and restrictions intended to protect the public health and safety from a recurrence of such slum blight. The great weight of modern authority so holds. That the price received for the property after redevelopment may be less than the cost of its acquisition does not affect the exercise of the questioned power by the agency. Under the constitutional provision here invoked, a fair impact of any tax is all that is required. We therefore answer the third question in the negative.

The fourth question challenges the constitutionality of portions of secs. 48 and 81 of the act as being an improper delegation of legislative authority to the agency, in that insufficient standards are set out in such sections from which the agency is to determine what constitutes a fair value for uses of such parts of the project area that it decides to sell or lease and as to other details of such transactions. The pertinent article of the state constitution hereinbefore mentioned in the question deals with the distribution of powers. In our opinion the question in substance covers administrative acts to be carried out by the agency, rather than a delegation of legislative powers. Reasonably sufficient standards are set out in the sections under consideration so that slum areas of the kind involved in this case once removed will not return. This subject was also discussed to some extent in *Opinion to the Governor*, *supra*. We answer the fourth question in the negative.

. The papers in the case, with our decision endorsed thereon, are ordered to be sent back to the superior court for further proceedings.

FLYNN, C. J., and CONDON, J., dissent substantially for the reasons stated in their separate opinions in *Opinion to the Governor*, 76 R. I. 249.

*George Ajootian, pro se,* for complainant.

*Matthew E. Ward,* for respondent Providence Redevelopment Agency.

*William E. McCabe,* City Solicitor, *Francis D. McManus,* Ass't City Solicitor, for City of Providence.

*William E. Powers,* Atty. Gen., *Robert A. Coogan,* Ass't Atty. Gen., for State.