INDIANA STATE TOLL BRIDGE COMMISSION *v.* MINOR.

[No. 29,511. Filed January 10, 1957.]

*Evan A. McLinn,* of New Albany, for appellant.

*Johnson & Carroll, John L. Carroll,* and *Joseph B. Minor,* all of Evansville, for appellee.

EMMERT, J.—This is an appeal from a judgment for appellee in the sum of $5,314.76, entered on a special finding of facts and conclusion of law. There are nine specifications in the assignments of errors, all of which can be decided by a determination of the general issues presented in the argument section of appellant's original brief, and issues not therein briefed as required by Rule 2-17 are waived.

The complaint was for attorney's fees, expenses and costs incident to such services, and prayed judgment against the Indiana State Toll-Bridge Commission for this amount, and an order against the Auditor of State requiring him to pay the judgment. The action against the Auditor was later dismissed before the issues were closed.

In substance, appellant's plea in abatement charged the action against the Indiana State Toll-Bridge Commission was a money demand against the State of Indiana, which could only be prosecuted in the Superior Court of Marion County under §4-1501, Burns' 1946 Replacement; that the Commission on September 4, 1951, fixed and established the office of the Commission in room number 302, State House, Indianapolis, where it has since been maintained pursuant to §36-3003, Burns' 1949 Replacement (Section 3 of the State Toll-Bridge Commission Act, Ch. 79 of 1939 Acts) ; that Vanderburgh Circuit Court had no jurisdiction over the subject matter of the action or the person of appellant; and that the venue of the action was in Marion County.

Appellee's demurrer to the plea in abatement was sustained, and we find no error in this. The Indiana State Toll-Bridge Commission Act, Chapter 79 ▮ of the 1939 Acts, and amendments thereto, is to be construed in its entirety, and when so construed it is apparent the General Assembly created a public corporate entity separate from the State as a sovereign corporate entity.

"There is hereby created a body corporate under the name of Indiana state toll-bridge commission which shall have power to contract and be contracted with, to sue and to be sued in that name and to adopt a seal and alter the same at pleasure.
. . .

"The commission shall have the power to establish by-laws, rules and regulations for its own government and to make and enter into all contracts or agreements and do all things necessary or incidental to the performance of its duties and the execution of its powers under this act. The commission may employ engineering, architectural and construction experts and inspectors and attorneys and such other employees as may be necessary in its opinion and fix their compensation, all of whom shall do such work as the commission shall direct. All expenses so incurred by the commission shall be paid solely from funds provided under the authority of this act." Section 36-3001, Burns' 1949 Replacement.[1]

The bonds authorized to be issued are not issued in the name of the State and are not its obligation. Sec-

---

1. Section 4 further authorizes employment of attorneys. "The commission is hereby authorized to inquire into the necessity and existing need for the construction, or acquisition by purchase, or otherwise, or condemnation, of any interstate bridge between the state of Indiana and any adjoining state over any stream which forms the boundary between the state of Indiana and any such state; or the enlargement, extension of, or improvement of such bridge. For the purpose of such inquiry, the commission may employ engineers and construction experts, inspectors and attorneys and fix their compensation. . . ." Section 36-3004, Burns' 1949 Replacement.

tion 36-3010, Burns' 1949 Replacement (Supp.).

■ A toll-bridge does not become the property of the State until its bonds have been paid, and the interstate bridge fund or other funds of the State reimbursed for moneys expended for such bridges. Section 36-3013, Burns' 1949 Replacement (Supp.). The action was not one against the State, and §4-1501, Burns' 1946 Replacement, concerning money demands on contract against the State, has no bearing on this suit.

Section 2-706 and §2-804, Burns' 1946 Replacement, are to be construed in *pari materia*.[2] "Director" is used in its generic sense, and the plea failed to allege there was no chairman of the Commission a resident of Vanderburgh County, or that no service of process was had upon the chairman of the Commission who was a resident of such county.

"A plea in abatement must be certain to every intent and in every particular. It requires the utmost fullness, certainty and particularity of state-

■■ ment, leaving nothing to be supplied by intendment or construction. The pleader must not only answer fully what is necessary to be answered, but must anticipate and exclude all such matters as would, if alleged upon the opposite side, defeat his plea. *Needham* v. *Wright* (1895), 140 Ind. 190, 39 N. E. 510; *State* v. *Comer* (1902), 157 Ind. 611, 62 N. E. 452;

---

2. "Any action against any corporation organized under any law of this state may be brought in any county where such corporation has an office or agency for the transaction of business, or in which any person resides upon whom process may be served against such corporation." Section 2-706, Burns' 1946 Replacement.

"Process against any domestic corporation shall be served upon any one of the following persons or officers of the corporation: The president, vice-president, chairman of the board of directors or trustees, cashier, secretary, treasurer, director, or its resident agent named in its articles of incorporation, . . ." Section 2-804 (b), Burns' 1946 Replacement.

*National, etc. Ins. Co.* v. *Wolfe* (1914), 59 Ind. App. 418, 106 N. E. 390." *Knotts* v. *Clark Construction Co.* (1921), 191 Ind. 354, 359, 131 N. E. 921, 132 N. E. 678. There is nothing in the act creating the Toll-Bridge Commission which restricts the venue of an action *in personam* against it, and the suit was properly brought in Vanderburgh County, and service of process acquired jurisdiction for all the plea in abatement charges. *Guy* v. *Penn. R. Co.* (1949), — Ohio App. —, 87 N. E. 2d 712; *National Shawmut Bank* v. *Waterville* (1934), 285 Mass. 252, 189 N. E. 92.

Appellant's chief reason for reversal is that appellee did not plead or prove that he had the written consent of the Attorney General for his employment from October 1, 1952, to September 30, 1953, and that Chapter 70 of the 1943 Acts required this consent. The material parts of this act follow:

"The attorney-general of the state of Indiana shall have the sole right and power to appoint all necessary deputy attorneys-general, and to assign any deputy so appointed to any agency of the state of Indiana to perform in behalf of such agency and the state any and all of the rights, powers or duties now or hereafter conferred by law or laws upon the attorney-general, or done by any attorney, counsellor, or deputy attorney-general for such agency. The attorney-general shall have the power and authority to remove any deputy at any time." Section 49-1927, Burns' 1951 Replacement.

"No agency, except as provided in this act, shall have any right to name, appoint, employ or hire any attorney, or special or general counsel to represent it or perform any legal service in behalf of such agency and the state without the written consent of the attorney-general." Section 49-1929, Burns' 1951 Replacement.

"The term 'agency' whenever used in this act means and includes any board, bureau, commission, department, agency or instrumentality of the state of Indiana: Provided, however, this act shall not be construed to apply where:

(1) An appointee has by law duties of a quasi-judicial nature.

(2) Counsel by law is required to represent the public, as distinguished from the state of Indiana, or its agencies.

(3) A substantial part of the duties are in collecting and maintaining statistical information and a legislative reference library.

(4) A constitutional officer of the state is by law made a board, bureau, commission, department, agency or instrumentality of the state of Indiana." Section 49-1932(b), Burns' 1951 Replacement.

On the second Monday in January, 1943, the office of Attorney General again became elective. Section 49-1920, Burns' 1951 Replacement. The General Assembly had rejected the position that the Governor should be able to appoint an Attorney General, and adopted the position that it was desirable to have an Attorney General elected by the people and primarily responsible to them, in order to safeguard his duty to give independent legal advice without being beholden to the chief executive, and to furnish some independent protection to the individual citizen when he had a controversy with the State or its agencies. It was an implementation of the American philosophy of checks and balances in government. Before 1943, many of the various boards, bureaus and commissions had been employing their own attorneys, with no effective authority vested in the Attorney General to establish a general legal policy for such agencies, and no responsibility of counsel to the Attorney General. Independent legal representation for the State could not be accomplished under such practice, and Chapter 70 of the 1943 Acts was enacted to give the State independent legal representation under an Attorney General responsible to the people.

Appellant emphatically contends that under §49-1929,

Burns' 1951 Replacement, *supra,* the appellee had the duty of alleging and proving the Attorney General had given his written consent to his employment by the Toll-Bridge Commission. But this section limits the legal services "in behalf of such agency *and* the state." (Italics added.) Thus, the restriction as to employment is limited to representation of both the state and its agency. Again, we must hold the term "state" means the State of Indiana in its corporate sovereign capacity.[3] If we should adopt the construction urged by appellant, the Attorney General would have the veto power over employment of counsel by all our state colleges and universities, every school corporation, every civil city and town as well as other corporate entities of a public nature. As we observed in *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 596, 604, 99 N. E. 2d 839, "The Legislature did not intend that the Attorney General be authorized or required to undertake the impossible task of representing every political subdivision of the state." The Indiana State Toll-Bridge Commission is a separate corporate entity, and although it can be considered an instrumentality and agency of the state, it is not the State in its corporate sovereign capacity. There is nothing in *Ennis* v.

---

3. "The word 'state' as used in §49-1924, Burns' 1951 Replacement, means the state of Indiana in its sovereign or corporate capacity." *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 596, 604, 99 N. E. 2d 839.

"But the courts of the State and United States are open to the State, both in its sovereign capacity and by virtue of its corporate rights, in both of which characters it sued here." *State* v. *The Ohio Oil Co.* (1898), 150 Ind. 21, 27, 28, 49 N. E. 809, 47 L. R. A. 627.

"The State is a political corporate body, can act only through agents, and can command only by laws." *Poindexter* v. *Greenhow* (1885), 114 U. S. 270, 288, 29 L. Ed. 185, 5 S. Ct. 903.

" 'The King and his subjects together compose the corporation, and he is incorporated with them and they with him, and he is the head and they are the members.' " Maitland, The Crown as Corporation (1901), 17 Law Quarterly Review 131, 144.

*State Highway Commission* (1952), 231 Ind. 311, 108 N. E. 2d 687, which in any manner conflicts with our present holding. In this case we did not decide the Indiana Toll Road Commission was not a corporate entity. What we there held was "The commission is not a corporation within the meaning of Section 13, Article 11, of the Constitution of Indiana."[4]

On September 11, 1952, appellant, at a special meeting of the Commission, adopted a resolution employing appellee as its attorney from October 1, 1952, ■ to September 30, 1953, inclusive. The resolution provided that the chairman, Walter G. Koch sign it, which he did. All the members of the Commission signed the minutes for this meeting. Appellant now contends that since the agreement could not be performed within one year the action was barred by the fifth clause of §33-101, Burns' 1949 Replacement. It is true the contract could not be performed within one year. *Griffith* v. *Hammer* (1920), 73 Ind. App. 159, 126 N. E. 855. But the resolution, duly enacted, placed of record, and signed by the chairman as required by it constituted a sufficient memorandum to take the contract out of the prohibition of the Statute of Frauds.[5] See authorities cited in *Board, etc.* v. *Howell* (1899), 21 Ind. App. 495, 52 N. E. 769; Anno. 127 A. L. R. 236-242.

Judgment affirmed.

Achor, C. J., Arterburn, Bobbitt and Landis, JJ., concur.

NOTE.—Reported in 139 N. E. 2d 445.

---

4. "Corporations, other than banking, shall not be created by special Act, but may be formed under general laws." Section 13, Article 11, Constitution of Indiana.

5. "Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years." Section 33-101, Burns' 1949 Replacement.