Henderson, Aud'r, *v.* Board of Comm'rs of State Soldiers', etc., Monument.

No. 16,153.

HENDERSON, AUDITOR, *v.* THE BOARD OF COMMISSIONERS OF THE STATE SOLDIERS' AND SAILORS' MONUMENT.

SOLDIERS' MONUMENT.—*Statute Construed.*—*Incidental Expenses.*—*From What Fund Paid.*—*Appropriation.*— Under the act of March 3d, 1887, providing for the erection of a State Soldiers' and Sailors' Monument, etc., no part of the sum of $200,000 appropriated for the erection of the monument can properly be expended in the payment of merely incidental expenses. There is a sufficient appropriation in said act to make it the duty of the auditor of State to draw warrants for the payment of such incidental expenses out of the "General Fund" in the State treasury. The act provides for the incurring of said incidentals, and directs that the same shall be paid. This is sufficient. The use of technical words in a statute making an appropriation is not necessary.

From the Marion Circuit Court.

*A. G. Smith,* Attorney General, for appellant.

*W. E. Niblack* and *A. J. Beveridge,* for appellee.

McBRIDE, J.—This was an application by the appellees, the board of commissioners of the State Soldiers' and Sailors' Monument, for a writ of mandate against the appellant as auditor of State.

The controversy can be best stated by quoting the complaint, which is brief, and, omitting prefatory matter, is as follows:

"Your petitioners, George J. Langsdale, Thomas W. Bennett, Mahlon D. Manson, George W. Johnson and DeWitt C. McCollum, respectfully say that they constitute the board of commissioners of the State Soldiers' and Sailors' Monument, provided for by the act known as 'An Act to provide for the erection of a State Soldiers' and Sailors' Monument, or Memorial Hall or Monument and Memorial Hall combined, according to the discretion of the trustees in this act provided for, and declaring an emergency,' approved March 3d, 1887; that said board of commissioners, soon after its

organization, proceeded to erect a Soldiers' and Sailors' Monument, as provided in said act, at an estimated cost not exceeding two hundred thousand ($200,000) dollars, the amount appropriated by said act; that the sum of ninety-nine thousand and four hundred and forty-one dollars and eleven cents ($99,441.11) has been expended in structural expenses upon said monument, and that contracts are outstanding for additional work to be performed upon, and material to be used in the erection of said monument, to meet and discharge which the further sum of ninety thousand nine hundred and eighty-two dollars and sixty cents ($90,982.60) will be required; that other sums of money have been expended, as incidental expenses, by said board of commissioners in the discharge of their duties, which have devolved upon them, no part of which incidental expenses has been applied in payment of the structural expenses hereinabove referred to, and which your petitioners are advised and believe are not properly payable out of the amount appropriated by the act for the erection of the monument in question, as follows:

| | | |
|---|---:|---:|
| For payment of architects, including plans and model | $10,348 | 35 |
| For commissioners' per diem, travelling and hotel expenses | 8,879 | 82 |
| For engineering | 15 | 00 |
| For experts | 1,404 | 25 |
| For attorneys' services | 165 | 00 |
| For office and miscellaneous expenses | 1,892 | 23 |
| For secretary's salary | 1,817 | 25 |
| For printing and stationery | 1,401 | 77 |
| For superintendence | 2,265 | 50 |
| For advertising | 795 | 11 |
| For removing Governor Morton's monument out of the way | 203 | 25 |
| Making a total of | $29,187 | 53 |

"Your petitioners say that said several sums of money are merely incidental expenses; that no part of them are structural expenses; but notwithstanding the fact that said sums are purely and solely incidental expenses, they have nevertheless been paid by the treasurer of State upon warrants issued by the auditor of State, and against and in the face of the repeated request of said board of commissioners not to do so, and their repeated protest against so doing, have been by said auditor of State charged to and against the fund of two hundred thousand ($200,000) dollars created and set apart by the above recited act, for the erection of a Soldiers' and Sailors' Monument, known as the 'Monumental Fund;' that they, said petitioners, have demanded of John O. Henderson, who is the present auditor of State, that he shall transfer the several sums, all of which are purely incidental expenses, from said 'Monument Fund,' and charge the same to and over against the 'General Fund' in the hands of the treasurer of State, for the payment of current expenses, and that the said John O. Henderson has failed and refused and still fails and refuses to comply with their said demand either in whole or in part or in any respect.

"Wherefore, your petitioners pray that an alternative writ of mandate shall be issued and directed to the said John O. Henderson, requiring him to so transfer said several sums of money so paid and classified, as merely incidental expenses, from said 'Monument Fund,' and to charge the same to and over against what is known as the 'General Fund,' in the State treasury, as above stated, or else to show cause why he shall not or ought not to do so, and will ever pray.                    WILLIAM E. NIBLACK,
              "ALBERT J. BEVERIDGE,
                    "Attorneys for Petitioners.

"George J. Langsdale, one of the above named petitioners, being duly sworn, says that he is the president of said board of commissioners of the State Soldiers' and Sailors'

Monument, and that he is fully conversant with the facts and matters set out in the foregoing petition; and that the matters and things alleged in the foregoing petition are true, as he is informed and verily believes.

"GEORGE J. LANGSDALE, President.

"Subscribed and sworn to before me, a notary public in and for the county of Marion, State of Indiana, this 20th day of April, 1891. EVA EDWARDS,.

"[SEAL.] Notary Public."

The appellee appeared, waived the issuance of an alternate writ of mandate, and demurred to the petition on the ground that it did not state facts sufficient to entitle the petitioner to an alternative or peremptory writ of mandate. The demurrer was overruled, and the appellant, excepting to the ruling, declined to plead further. Judgment was rendered awarding a peremptory writ of mandate, and from such judgment this appeal is prosecuted.

The questions presented call for a construction of the act approved March 3d, 1887, known as the State Soldiers' and Sailors' Monument Act. Acts of 1887, p. 30. Elliott's Supp., section 2048.

The appellee insists that the sum of $200,000 appropriated by that act was intended by the Legislature to be devoted solely to the structural expense of erecting the monument; that no part of it was to be used for the payment of incidental expenses, and that all incidental expenses are to be paid from the general fund in the State treasury. The appellant's contention is, that the sum appropriated was intended to cover the entire amount to be paid by the State toward the erection of the monument, and that there is no appropriation of any other sum for the payment of incidental expenses.

The provisions of the act in question are, substantially, as follows:

"Section 1. The sum of two hundred thousand dollars * * is hereby appropriated, out of any moneys in the

treasury not otherwise appropriated, for the purpose of erecting a State Soldiers' and Sailors' Monument, said appropriation to be used in connection with such other funds as have already been, or may hereafter be, donated and contributed for said purpose."

Section 2 provides for the appointment of five commissioners, prescribes their oath of office, requires them to each give bond in the sum of $5,000 for the faithful performance of their duties, and further conditioned that the cost of the monument shall not exceed the appropriation, with donations and contributions; fixes their compensation at four dollars per day, and travelling expenses, and provides for the filling of vacancies.

Section 3 prescribes certain of their duties, locates the monument in Circle Park, in the city of Indianapolis, and authorizes the making of certain contracts with the city.

Section 4 requires the commissioners to prepare, select, or adopt a design for the monument, to advertise for plans, designs and specifications, to offer a premium of $1,000 for the best, and $500 for the second-best design, with authority to reject any and all designs offered, and to readvertise as often as may be necessary to procure suitable designs and plans, and authorizing them to employ experts to examine all plans, and test all estimates submitted.

Section 5 authorizes the letting of contracts for the work, and prescribes the manner of paying the contractors.

Section 6 prescribes the material to be used in the erection of the monument, and requires the architect to give bond, with sureties, in the penal sum of $10,000, "conditioned that said plan shall be perfect and complete for the purpose designed and intended, and that the monument shall be fully completed and finished as a whole, and in every part, for and within the price and cost estimated and fixed by said architect, and which price or cost shall be stated in his proposition or submission of plan and specifications." This section also forbids the making of any change in the plans

or specifications which will increase the aggregate cost of the monument so as to exceed the cost prescribed in the act.

Section 7 authorizes the appointment of a secretary, prescribes his duties and fixes his compensation at $75 per month.

Section 8 authorizes the commissioners to employ a superintendent, whose duties and compensation they are authorized to fix.

Section 9 forbids members and officers of the board to have any interest in any contract connected with the erection of the monument and prescribes penalties.

Section 10 makes the architect, when plans are accepted, the supervising architect, requires of him a bond as such supervising architect and provides for his compensation.

The case of *Campbell* v. *Board, etc.,* 115 Ind. 591, involved the construction of this act. It was there held, that it was the intention of the Legislature that the entire sum of $200,000, appropriated, should be devoted, so far as used at all, to the structural work of the monument, and that all incidental expenses, such as are involved in this case, must be paid from the general fund in the State treasury, and that there was sufficient in the act to operate as an appropriation, authorizing the auditor of State to draw warrants on the treasurer of State to pay the same.

That case is vigorously attacked by the appellant, and we are asked to overrule it.

It is manifest that if *Campbell* v. *Board, etc., supra,* was correctly decided, it is decisive of the case now before us. After careful consideration of the question, we are of the opinion that the conclusion reached in *Campbell* v. *Board, etc., supra,* was correct.

Section 1, of the act, appropriates $200,000 for the purpose of *erecting* a monument.

Section 4 provides for advertising for plans and specifications for a monument to cost not exceeding that amount.

The commissioners and architect each and all give bond that it shall not exceed in cost that amount. If the incidental expenses are all to be deducted from the $200,000, how can the board of commissioners or the architect act safely and intelligently in the preparation and acceptance of plans and specifications? If they understand that a certain definite sum is available for structural work, they have a tangible basis upon which to calculate. The act compels the incurring of certain incidental expenses, the amount of which is necessarily uncertain. No one can tell in advance what events may occur to delay or prolong the prosecution of the work, or how much time the commissioners may have to give to it. It can not be foretold how often they may have to advertise for plans and specifications before such plans will be submitted as will meet the requirements. Nor could they tell in advance how often they might be compelled to employ experts to assist in the selection of plans and test estimates.

Already incidental expenses have been incurred and paid amounting to more than $29,000. It is not claimed that any of them were not necessary to the proper prosecution of the work. It is not possible to foretell how much time will still be required for the completion of the work, and, as a consequence, how much additional must be paid for salaries and other incidental expenses.

When the commissioners advertised, inviting plans and specifications, upon what basis were architects invited to make their estimates? Did the Legislature intend to say to them, "First guess upon the probable amount of the $200,000 which will be absorbed in incidental expenses, and bind yourself with sureties, in the penal sum of $10,000 that your guess is right?"

To give to the act the construction contended for by the appellant, would be to hold that the Legislature required at the hands of the commissioners and architect very unreasonable, if not impossible, things; but if the intention of the

Legislature was that the $200,000 should be devoted alone to structural work, the commissioners could easily select a design and let a contract for the erection of a monument within the limits named.

The case of *Board, etc.,* v. *Whittaker,* 81 Ind. 297, is in point. The Legislature appropriated $2,000,000 for the building of a new State House, and limited the entire cost to $2,000,000. The provisions of the two acts are very much alike—indeed, the act providing for the erection of the monument is, in many of its provisions, and in some entire sections, literal copies of the act providing for the erection of a new State House, which will be found in the acts of the special session of 1877, page 68.

Like the act now in question, that act not only in express terms limited the cost of the building to $2,000,000, but also required the giving of bonds both by the commissioners and by the architect.

The bond required of the commissioners was conditioned that the cost of the building should not exceed $2,000,000, and the bond required of the architect was conditioned that the building should be " fully completed, and finished as a whole, and in every part, for and within the cost and price estimated, and paid by such architect." The court held that the sum of $2,000,000 might be expended in the *construction* of the new State House, and that in addition thereto all incidental expenses, such as salaries, travelling expenses of the board, compensation of architect, secretary and superintendent, rent, etc., might be paid out of the fund denominated the "New State House Fund," but that such expenses should not be deducted from the $2,000,000 which might be expended in what might strictly be called the construction of the building.

So in this case we hold, that the sum of $200,000, appropriated for the erection of the monument, can only be expended in the actual structural work, and that no part of

it can properly be expended in the payment of merely incidental expenses.

Counsel for appellant insists that the case of *Board, etc., v. Whittaker, supra,* is not authority, because a special tax was levied for the collection of a special State House fund, while there is no special monument fund. This can not affect the question, as the application of the sum limited for the erection of either structure is not made to depend upon the amount of money belonging to any special fund. The board of State House commissioners were limited to the expenditure of $2,000,000 in the erection of the State House, without regard to the amount realized from the special tax levied for that purpose.

The question remains, is there an appropriation authorizing the auditor of State to draw warrants on the treasurer of State for the payment of the incidental expenses?

In *Campbell* v. *Board, etc., supra,* the court said : " It is true, as claimed, that no money can be rightfully drawn from the treasury except in pursuance of an appropriation made by law, but such an appropriation may be made impliedly, as well as expressly, and in general, as well as specific terms. * . * The use of technical words in a statute making an appropriation is not necessary. There may be an appropriation of public moneys to a given purpose without in any manner designating the act as an appropriation. It may be said generally, that a direction to the proper officer, or officers, to pay money out of the treasury on a given claim, or class of claims, or for a given object, may, by implication, be held to be an appropriation of a sufficient amount of money to make the required payments." Citing *Ristine* v. *State, ex rel.,* 20 Ind. 328.

It is possible, as claimed by the appellant, that the language above quoted was outside of the question before the court in that case. It, however, states the law correctly, and we fully approve and adopt it. The eighth subdivision of section 5611, R. S. 1881, authorizes the auditor of State to

" Draw warrants on the treasurer for all moneys directed by law to be paid out of the treasury to public officers, or for any other object whatsoever, as the same may become payable." The act providing for the erection of the monument expressly authorizes the incurring of each of said several items of incidental expenses, and directs that the same shall be paid. We think there is a sufficient appropriation to make it the duty of the appellant to draw warrants for the payment of the same. For a very full discussion of what constitutes an appropriation of money, see the case of *Carr* v. *State, ex rel.,* 127 Ind. 204.

The judgment of the Marion Circuit Court is affirmed, with costs.

Filed June 12, 1891 ; petition for a rehearing overruled Sept. 16, 1891.