ORBISON *v.* WELSH, GOVERNOR OF INDIANA, ET AL.

[No. 30,147. Filed January 22, 1962.]

386

*Howard S. Young, Jr.*, and *Young & Young*, of counsel, of Indianapolis, for appellant.

*Edwin K. Steers*, Attorney General, and *Ellen Anne Lloyd*, Deputy Attorney General, for appellees.

LANDIS, J.—This case involves the constitutionality of Chapter 11 of the Acts of 1961[1] commonly known as the Indiana Port Commission Act.

Appellant, a taxpayer, brought action for declaratory judgment and injunction against the Governor, Attorney General, and members of the Indiana Port Commission, alleging fourteen different respects in

---

1. Burns' (1961 Repl.), §§68-1201 to 68-1227, inclusive.

which said Indiana Port Commission Act was in violation of the Indiana and U. S. Constitutions, and asking that appellees-defendants be enjoined from expending any money, issuing any bonds or taking any proceedings under said Act. Appellees filed answer and the cause was submitted to the court for trial resulting in a finding and judgment for appellees. Appellant assigns as error the overruling of his motion for new trial.

On this appeal we shall consider the fourteen separate contentions of appellant as to the unconstitutionality of the above Act.

*First.* Appellant contends the title of the Act is not as broad as the subject matter (in several respects) and the Act is therefore in violation of Art. 4, §19 of the Indiana Constitution. The cited section of the Constitution provides:

> "Every act, amendatory act or amendment of a code shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, amendatory act or amendment of a code, which shall not be expressed in the title, such act, . . . shall be void only as to so much thereof as shall not be expressed in the title. . . ."

The title to the Indiana Port Commission Act reads as follows:

### "INDIANA PORT COMMISSION

"AN ACT concerning the establishment, development and operation of a public port on Lake Michigan; abolishing the Indiana Board of Public Harbors and Terminals and creating the Indiana Port Commission and defining its powers and duties; concerning the financing, acquisition, improvement and operation of such public port and terminal facilities and providing for cooperation

with the federal government; repealing all laws and parts of laws in conflict herewith; and making an appropriation." [Acts 1961, ch. 11, p. 14.]

Appellant urges (a) that the title makes no mention of the proposed use of funds raised by taxation whereas a part of the body of the Act (§12), which follows, purports to create the Indiana Port Fund and to transfer to said fund monies raised by taxation, viz.:

" . . . Said fund shall be held in the name of the Indiana Port Commission, shall be administered by the commission, and all expenditures therefrom shall be made by the commission, subject, however, to the approval by governor and the state budget committee of all expenditures of moneys advanced to said fund by the State of Indiana. . . . All unexpended funds appropriated to the Indiana Board of Public Harbors and Terminals by Sec. 6 of Chapter 286 of the Acts of the Indiana General Assembly of 1957 are hereby transferred to and made a part of the Indiana Port Fund hereby created, and shall be expended for the purpose and in the manner provided by this act, subject only to the restrictions contained herein and no others: . . . ." [Acts of 1961, ch. 11, §12, p. 26, being Burns' (1961 Repl.), §68-1210.]

Appellant urges (b) the title does not refer to the proposed issuance of port revenue bonds for construction of the port, whereas §13 of the Act provides in part as follows:

"The commission is hereby authorized to provide by resolution, at one time or from time to time, for the issuance of port revenue bonds of the state for the purpose of paying all or any part of the cost of a port project. . . ." [Acts of 1961, ch. 11, §13, p. 27, being Burns' (1961 Repl.), §68-1211.]

Appellant urges (c) the title does not refer to the proposed construction of airplane landing fields, rail-

roads, roadways, sewers or the financing [sic] [furnishing] of utility service, although §2(c) of the Act provides in part:

"The words 'port project' shall include any facilities, adjuncts and appurtenances necessary to operate a modern port, including . . . railroad equipment and trackage, roadways, airplane landing fields, . . . sewers, drains, works for the treatment of sewage, garbage and wastes, and the furnishing of utility service necessary to serve the property . . . ." [Acts of 1961, ch. 11, §2(c), p. 15, being Burns' (1961 Repl.), §68-1202(c).]

Appellant urges (d) the title does not refer to the proposed relocation of roads, railroad or utility facilities or for their payment out of public funds although §8 of the Act provides in part:

"If the commission shall find it necessary to change the location of any portion of any public road, railroad or public utility facility, it shall cause the same to be reconstructed . . . . The cost of such reconstruction, relocation or removal . . . shall be ascertained and paid by the commission as a part of the cost of such port or port project. . . ." [Acts of 1961, ch. 11, §8, p. 22, being Burns' (1961 Repl.), §68-1209.]

This Court has stated in considering the constitutionality of an act with reference to its title, that a liberal interpretation will be adopted rather than a critical construction calculated to defeat it. *Ennis* v. *State Highway Commission* (1952), 231 Ind. 311, 317, 108 N. E. 2d 687, 690.

The title need not contain a complete index or abstract of the contents of an act, but the title sufficiently expresses the subject when upon a liberal construction it gives such notice as to apprise the legislators and the public of the

general subject matter of the legislation. *Wright-Bachman, Inc.* v. *Hodnett, et al.* (1956), 235 Ind. 307, 317, 133 N. E. 2d 713, 717; *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 288, 200 N. E. 688, 690.

If a title expresses the general purpose of the act, everything contained in the body of the act which is germane to such purpose or properly connected therewith as a means of making the act effective to accomplish the purpose is covered by the title. *Wright-Bachman, Inc.* v. *Hodnett, et al.* (1956), *supra; Benson, Administrator* v. *Christian* (1891), 129 Ind. 535, 538, 29 N. E. 26, 27.

Applying these principles to the case before us, it will be noted that the title of the Indiana Port Commission Act makes reference to ". . . the financing . . . of such public port . . . ." We believe §12 of the Act attempting to create the Indiana Port Fund and to transfer to said fund money raised by taxation is properly connected with the purpose of financing the port so as to be included within the title of the Act.

Similarly it is our opinion that the reference in the title to financing of the port, etc., is sufficient to embrace the issuance of bonds by the Port Commission. See: *Alanel Corp., etc.* v. *Indpls. Redevelop't Comm. et al.* (1958), 239 Ind. 35, 50, 154 N. E. 2d 515, 523; *City of Indianapolis et al.* v. *Buckner et al.* (1954), 233 Ind. 32, 37, 116 N. E. 2d 507, 510.

The point raised by appellant that the title does not refer to the proposed construction of airplane landing fields, railroads, roadways, sewers, or the furnishing of utility service, we also believe is not well taken. The title expressly refers to

". . . the establishment, development and operation of a public port . . ." and to the ". . . acquisition, improvement and operation of such public port and terminal facilities . . . ." Section 2(c) of the Act defines "port project" to include the proposed construction and furnishing of the items herein referred to. All of these matters referred to in the body of the Act are germane to and properly connected with the portions of the title above referred to.

The possible relocation of roads, railroads or public utilities by the Commission (which is virtually identical with the Acts of 1951, ch. 281, §6, p. 856,— the Toll Road Act)[2] is limited to their utilization in connection with the port and terminal facilities, and such provisions are likewise germane and properly connected with the ". . . establishment, development and . . . improvement . . . of [a] public port . . ." specified in the title of the Act. See: *Book* v. *Board of Flood Control Comrs. etc. et al.* (1959), 239 Ind. 160, 172, 156 N. E. 2d 87, 93.

It is our opinion that the title of the Act is sufficient to meet the requirements of Art. 4, §19 of the Constitution of Indiana.

*Second.* Appellant here contends the Act constitutes an attempt by the Legislature to confer extra-territorial effect on one of its own acts.

Specifically, appellant contends §5 of the Act is unconstitutional in that it authorizes and directs the Commission to enter into agreements for the building and construction of a public port ". . . to be located within the State of Indiana or on Lake Michigan *in waters adjacent to the State of Indiana; . . . ."* (Emphasis added.) This section of the Act, appellant con-

2. Burns' §36-3206 (1961 Supp.).

tends, violates Art. 14, §1 of the Constitution of Indiana providing the northern boundary of the state shall be ". . . an east and west line, drawn through a point ten miles north of the southern extreme of Lake Michigan; . . . ."

Appellant does not specifically contend the above portion of the Act objected to attempts to authorize the construction of the port beyond the ten mile limit set forth in the Constitution, but it appears the Act only authorizes the port within the State of Indiana or in Lake Michigan in waters adjacent to the state. We do not see how this language, reasonably construed, could be considered in violation of the constitutional provision above cited.

*Third.* Appellant further contends the Act is a pledge of credit of the state in authorizing expenditure of tax revenues and their repayment out of the proceeds of port revenue bonds, contrary to Art. 11, §12 of the Indiana Constitution, providing:

"The State shall not be a stockholder in any bank, after the expiration of the present bank charter; *nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation;* nor shall the State hereafter become a stockholder in any corporation or association." (Emphasis added.)

Section 12 of the Indiana Port Commission Act provides, in part:

"Upon the sale of port revenue bonds for any port project, the funds expended from the Indiana Port Fund in connection with the development of such project and any obligation or expense incurred by the commission for surveys, preparation of plans and specifications, and other engineering or other services in connection with develop-

ment of such project shall be reimbursed to the state general fund from the proceeds of such bonds." [Acts of 1961, ch. 11, §12, p. 26, *supra*, being Burns' (1961 Repl.), §68-1210.]

However, this Court has heretofore determined in a case involving the Toll Road Act that Art. 11, §12 of the Indiana Constitution has reference to the advancement of credit to *private* corporations or associations and does not apply to an agency of this state. *Ennis* v. *State Highway Commission* (1952), *supra*, 231 Ind. 311, 333, 334, 108 N. E. 2d 687, 698. In such case we quoted from an Ohio case construing a similar provision of the Ohio Constitution, at p. 334 of 231 Ind., and p. 698 of 108 N. E. 2d, as follows:

" '. . . while that portion of the section forbids the giving or loaning of the state's credit to or in aid of a private business enterprise, it does not prohibit such gift or loan to a public organization created for a public purpose. . . .' " [*State, Ex.* v. *Defenbacher* (1950), 153 Ohio St. 268, 282, 91 N. E. 2d 512, 520.]

In the Ennis case, *supra*, we held the Toll Road Commission was not a private corporation and that the Act creating it therefore did not violate Art. 11, §12. We held in subsequent cases involving statutes setting up the Indiana State Toll Bridge Commission (*Ind. State Toll Bridge Comm.* v. *Minor* (1957), 236 Ind. 193, 139 N. E. 2d 445), and the State Office Building Commission (*Book* v. *State Office Bldg. Comm. et al.* (1958), 238 Ind. 120, 149 N. E. 2d 273), that such Commissions there created were public corporate entities; i.e., they were instrumentalities and agencies of the state although they did not constitute the state in its corporate sovereign capacity.

Appellant states the case of *Ennis* v. *State Highway Commission* (1952), *supra*, is distinguishable from the

case at bar, as the Ennis case did not involve a direct transfer of state funds as did the case at bar. In the Ennis case the Toll Road Act authorized the Highway Commission to expend funds under certain conditions, which funds were to be reimbursed to the Highway Commission from the proceeds of the toll road bonds. However, we believe this is a distinction without a difference as we see no reason why it is material whether the state funds were directly appropriated to an instrumentality of the state (such as the corporate body, the Port Commission), or whether they were appropriated to one state agency (Highway Commission) for the benefit and use of another state agency (the corporate body, the Toll Road Commission). However, appellant's argument could have no materiality in the case at bar, for as we have indicated above, several cases of this Court have held that the restriction of Art. 11, §12 of the Indiana Constitution does not apply to the advancing of funds to an agency of the state, as the Port Commission obviously is. In fact, the Toll Bridge Act and the State Office Building Act made similar provisions for state-appropriated money as did the Indiana Port Commission Act in the case before us.

*Fourth.* Appellant's fourth contention is that the Act authorizes the use of public funds for a purpose not public in nature.

Appellant's argument here is that either the Port Commission is an agency of the state so that its issuing of revenue bonds would be contracting a debt and pledging the credit of the state in violation of the Constitution, or if that is not the case, then the Commission must be a private corporation and the Act is providing for the loan of state funds derived from taxation for a purpose not truly public in nature.

We believe appellant's argument has heretofore been answered by our discussion of his third contention, *supra*, wherein we cited the Ennis, the ▮▮▮ Toll Bridge and the State Office Building cases. The similarity of the statute involved in the case at bar and the nature of the activity[3] created by the Indiana Port Commission Act compel us to conclude that the Port Commission is a public corporate entity separate from the state as a sovereign entity, or to put it in other words, the Port Commission is the same sort of hybrid as existed in the Toll Bridge and State Office Building cases: that is, it is a separate corporate entity which is an instrumentality or agency of the state although it is not the state in its sovereign corporate capacity.

Appellant has contended that the Commission must be a private corporation since the Commission is authorized under the statute to lease to others for development any portion of Commission lands on such terms as the Commission members determine to be advantageous; and the Commission is further empowered to spend the monies in the Indiana Port Fund subject only to approval of the Governor and the Budget Committee as to funds advanced by the state. There is no restriction on the expenditure of funds derived from other sources.

The same argument here advanced against the validity of a lease by a public corporate entity such

3. Port authorities in numerous other states created under similar legislation and with comparable powers have been held by their courts to be performing governmental functions in the interests of the public and to be entrusted with powers of the state for public purposes. *Opinion of the Justices* (1956), 334 Mass. 721, 136 N. E. 2d 223; *Port of N. Y. Authority* v. *City of Newark* (1952), 17 N. J. Super. 328, 85 A. 2d 815; *Miller* v. *Port of New York Authority* (1939), 18 N. J. Misc. 601, 15 A. 2d 262; *Helvering* v. *Gerhardt* (1938), 304 U. S. 405, 58 S. Ct. 969, 82 L. Ed. 1427; *Marmor* v. *Port of New York Authority* (1952), 203 Misc. 568, 116 N. Y. S. 2d 177.

as the Port Commission to private persons was refuted in the case of *Ports Authority* v. *Trust Co.* (1955), 242 N. C. 416, 422, 88 S. E. 2d 109, 113, where the Court stated:

"No question arises here as to the validity of a lease of properties for some use unrelated to the accomplishment of the primary purposes of the Authority. The Facility affected by the lease under consideration is adapated for use only in such operations as will enlarge the principal operations of the port. It is a means incident to providing adequate facilities for the marketing and export of grain and for the increase of the port's overall business.

"Close scrutiny impels the conclusion that the lease is advantageous both to the Authority and to the owners of the Revenue Bonds. . . .

"Beyond question, the Authority was created and empowered to act to accomplish a public purpose. *Webb* v. *Port Com.*, [1934], 205 N. C. 663, 172 S. E. 377. In such case, the principle applicable, in relation to this public purpose, is stated in 1 Dillon on Municipal Corporations (5th Ed.), sec. 269, as follows: 'Hence land taken for wharves is taken for a public purpose, although some portions of the land actually used may be thereafter, in the discretion of the city, divided off and placed in the exclusive possession of a lessee for the sole purpose of using it in the transaction of the necessary business connected with the loading and unloading of passengers and cargoes of ships and steamers.'

"The principle stated has been applied in seaport development cases: *Dyer* v. *Mayor, etc., of City of Baltimore* [1905], [c.c.], 140 Fed. 880, appeal dismissed, 201 U. S. 650, [1906, 26 S. Ct. 759, 50 L. Ed. 905]; *In re Mayor, etc., of New York* [1892], 135 N. Y. 253, 31 N. E. 1043, 31 Am. St. Rep. 825; *Marchant* v. *Mayor and City Council of Baltimore* [1924], 146 Md. 513, 126 A. 884.

"As aptly stated by *Peckham, J.*, in *In re Mayor, etc., of New York, supra:* 'When used by

lessees under the facts already stated, the use is a public one. The use is public while the property is thus leased, because it fills an undisputed necessity existing in regard to these common carriers by water, who are themselves engaged in fulfilling their obligations to the general public, —obligations which could not otherwise be properly or effectually performed.' "

The Court concluded that where the lease of a particular facility aided the accomplishment of the primary and public purposes of the Authority, the fact that the lessee was a private corporation was incidental and not controlling. To the same effect is the case of *Port of New York Authority* v. *J. E. Linde Paper Co.* (1953), 205 Misc. 110, 127 N. Y. S. 2d 155, 159, where the New York court said:

" . . . it is sufficient to state that the same contention was made before and rejected by the Court of Appeals in the Bush Terminal case, [Bush Terminal Co. v. City of New York, 152 Misc. 144, 273 N. Y. S. 331], supra. It was there held that the Port Authority Building or Inland Terminal No. 1, including the upper stories thereof where the tenant's premises are located, was constructed and is operated and maintained by the Port Authority as a self-sustaining governmental unit in the exercise of the powers of both states for a public purpose in which the people of both states are interested."

It is our opinion that the authority given to the Commission to lease lands of the Commission to others for development as the Commission deemed advantageous did not render the Commission a private corporation, and it is further our view that the authority to expend funds as provided in the Act did not amount to an unlawful diversion of state funds for a nonpublic purpose.

*Fifth.* Appellant here contends the Act authorizes an expenditure without a specific appropriation for such purpose contrary to Art. 10, §3 of the Indiana Constitution providing:

"No money shall be drawn from the Treasury, but in pursuance of appropriations made by law."

Appellant argues that §12 of the Indiana Port Commission Act is unconstitutional in that it either (a) authorizes the expenditure of money without a specific appropriation for such purpose, or (b) it transfers the money to the Commission with the same conditions imposed by the 1957 Act which originally appropriated the money to the Indiana Board of Public Harbors and Terminals.

Section 12 of the Indiana Port Commission Act in question creates the "Indiana Port Fund" to be held in the name of and administered by the Indiana Port Commission, and provides:

" . . . All unexpended funds appropriated to the Indiana Board of Public Harbors and Terminals by Sec. 6 of Chapter 286 of the Acts of the Indiana General Assembly of 1957 are hereby transferred to and made a part of the Indiana Port Fund hereby created, and shall be expended for the purpose and in the manner provided by this act, *subject only to the restrictions contained herein and no others:* . . . ." (Emphasis added.) [Acts of 1961, ch. 11, §12, p. 26, *supra,* being Burns' (1961 Repl.), §68-1210.]

The Acts of 1957, ch. 286, §6, had appropriated two million dollars to the Indiana Board of Public Harbors and Terminals with the expenditure conditioned on the prior approval by the Corps of Army Engineers. The money appropriated would be a standing appropriation and would not revert to the general

fund until the project was either completed or abandoned.

This Court has heretofore stated that no particular form need be followed in the making of an appropriation nor is it necessary that any particular language or words be used. The Legislature must merely indicate the purpose for which the money is to be used, the source from which it is to come, and indicate in some manner either the sum to be used or a method of ascertaining a maximum that may be used. *Carr, Auditor, et al.* v. *The State, ex rel. Coetlosquet* (1891), 127 Ind. 204, 209, 26 N. E. 778, 780, 11 L. R. A. 370, 372, 22 Am. St. Rep. 624, 628. See also: *Henderson, Aud'r*, v. *Board of Comm'rs of State Soldiers', etc., Monument* (1891), 129 Ind. 92, 100, 28 N. E. 127, 130, 13 L. R. A. 169, 173.

The source of the appropriation here is clearly indicated by §12 of the Indiana Port Commission Act to be the unexpended funds appropriated by the 1957 Act (ch. 286, §6) which are thereby transferred to the Indiana Port Fund. This is an appropriation of a discernable sum. The sum so designated is to be expended for the purposes set out in said §12, which include the acquisition of land or options for purchase of a port site and incidental expenses in connection with the port project, including the Commission's administrative expenses. It is further provided in §12 that all expenditures are to be made by the Commission, thereby meeting the requirement that someone must be authorized to expend the sum. The Act in our judgment meets all the requirements of a valid appropriation.

Appellant's argument that §12 of the Indiana Port Commission Act merely transfers funds still subject

to a previously imposed condition in the 1957 Act is unfounded. Section 12, in reappropriating the money, specifically provides that the appropriation is subject only to the restrictions contained in the 1961 Act and no others. There can be no question as to the power of the subsequent Legislature in 1961 to repeal the Act passed by the previous Legislature in 1957 and thereby in this case to reappropriate to the Indiana Port Fund the unexpended funds involved in this appropriation without regard to the conditions imposed by the 1957 Act.

*Sixth.* Appellant's contention here is that the Act creates a corporation, other than a banking corporation, by a special act contrary to Art. 11, §13 of the Indiana Constitution providing:

> "Corporations, other than banking, shall not be created by special Act, but may be formed under general laws."

Section 3 of the Indiana Port Commission Act provides, in part:

> " . . . The commission hereby created is a body both corporate and politic in the State of Indiana, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of a port project shall be deemed and held to be essential governmental functions of the state, but the commission shall not however be immune from liability by reason thereof. ... ." [Acts of 1961, ch. 11, §3, p. 16, being Burns' (1961 Repl.), §68-1203.]

This Court has recently held in the following cases that Art. 11, §13 of the Indiana Constitution, *supra,* does not apply to public corporations similar in purpose to the Port Commission. *Ennis* v. *State Highway Commission* (1952), *supra,*

231 Ind. 311, 108 N. E. 2d 687; *Book* v. *State Office Bldg. Comm. et al.* (1958), *supra*, 238 Ind. 120, 149 N. E. 2d 273. See also: *Ind. State Toll Bridge Comm.* v. *Minor* (1957), *supra*, 236 Ind. 193, 139 N. E. 2d 445.

We stated in the Ennis case (1952, *supra*, at p. 325 of 231 Ind., and p. 694 of 108 N. E. 2d):

> "The constitutional debates on the Constitution as adopted in 1851 show the intent to restrict Section 13, Article 11, to private corporations only. This court has extended this section to cover municipal corporations. *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 73 N. E. 78 [68 L. R. A. 622]; *Sarlls, City Clerk* v. *State, ex rel.* [Trimble] (1929), 201 Ind. 88, 166 N. E. 270, [67 A. L. R. 718]. We will not further extend the section to cover boards or commissions of the state. . . ."

The Indiana Port Commission Act applies to the entire state; it is neither a local nor special act. The Port Commission was established to foster the agricultural, industrial and commercial development of the whole state, and to provide for the general welfare of all citizens of Indiana. (Acts of 1961, ch. 11, §1, p. 14.) We have heretofore stated in this opinion (see third and fourth points, *supra*) that the Port Commission is an agency or instrumentality of the state created for a public purpose. As such, it is a public corporation.

Subsequent to the Ennis case, *supra*, we stated in *Book* v. *State Office Bldg. Comm. et al.* (1958), *supra*, 238 Ind. 120, 136, 149 N. E. 2d 273, 282, that no reason had been advanced to persuade us to extend the provisions of Art. 11, §13 to include a corporation such as the State Office Building Commission created for the public purpose of providing adequate office space for the various state departments and agencies.

A fortiori, in the instant case we are unable to learn of any plausible reason why Art. 11, §13 should be extended by this Court to include within its prohibition the Indiana Port Commission, which is not a private corporation in any sense but is a public corporation of state-wide importance established to promote the agricultural, industrial and commercial life of Indiana and the general welfare of its citizens.

It is our conclusion the Indiana Port Commission is not a corporation within the meaning of Art. 11, §13, of the Constitution of Indiana.

*Seventh.* The next contention of appellant is that the Act authorizes the contraction of an unauthorized debt on behalf of the State.

Art. 10, §5 of the Indiana Constitution in this respect provides:

> "No law shall authorize any debt to be contracted, on behalf of the State, except in the following cases: To meet casual deficits in the revenue; to pay the interest on the State Debt; to repel invasion, suppress insurrection, or, if hostilities be threatened, provide for the public defense."

Art. 11, §12 of the Indiana Constitution in this respect states:

> " . . . nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation; nor shall the State hereafter become a stockholder in any corporation or association."

Chapter 11, §1 of the Acts of 1961 provides in part:

> " . . . and to issue port revenue bonds of the state payable solely from revenues, . . . ." [Acts of 1961, ch. 11, §1, p. 14, being Burns' (1961 Repl.), §68-1201.]

Section 4 of the Act provides:

"Port revenue bonds issued under the provisions of this act shall not be deemed to constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision, but such bonds shall be payable solely from the funds pledged for their payment as authorized herein, . . . . All such revenue bonds shall contain on the face thereof a statement to the effect that the bonds, as to both principal and interest, are not an obligation of the State of Indiana, or of any political subdivision thereof, but are payable solely from revenues pledged for their payment. . . ." [Acts of 1961, ch. 11, §4, p. 18, being Burns' (1961 Repl.), §68-1212.]

This Court has previously had this question before it in the cases involving the Toll Road Act, the Toll Bridge Act and the State Office Building Commission Act,[4] and in these cases, statutes almost identical in language were held not to create a debt or obligation of the state. It will be noted that the Indiana Port Commission Act above quoted, expressly states that the port revenue bonds issued thereunder shall not constitute a debt or pledge of credit of the state or of any political subdivision but shall be payable solely from the funds pledged for their payment as authorized therein.

In view of the foregoing provisions of the statute and the opinion we have previously expressed that the Port Commission is a corporate body separate from the State of Indiana in its sovereign capacity, it follows that the purchasers of the proposed bonds will have no right of action against the state but must

4. *Ennis* v. *State Highway Commission* (1952), 231 Ind. 311, 108 N. E. 2d 687; *Ind. State Toll Bridge Comm.* v. *Minor* (1957), 236 Ind. 193, 139 N. E. 2d 445; *Book* v. *State Office Bldg. Comm. et al.* (1958), 238 Ind. 120, 149 N. E. 2d 273.

rely solely for payment upon funds pledged as provided in the statute.

The Indiana Port Commission Act neither authorizes a debt to be contracted on behalf of the state, nor does it authorize a political corporation to █ contract debts in violation of Art. 10, §5, or Art. 11, §12 of the Indiana Constitution.

*Eighth.* Appellant contends here the Act purports to confer an improper exemption from taxation.

Art. 10, §1 of the Constitution of Indiana provides:

> "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; . . . excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

Section 27 of the Indiana Port Commission Act provides in part:

> " . . . the commission shall not be required to pay any taxes or assessments upon any port project or any property acquired or used by the commission under the provisions of this act, or upon the income therefrom, and the bonds issued under the provisions of this act, the interest thereon, the proceeds received by a holder from the sale of such bonds to the extent of the holder's cost of acquisition, or proceeds received upon redemption prior to maturity or proceeds received at maturity, and the receipt of such interest and proceeds shall be exempt from taxation in the State of Indiana for all purposes except the state inheritance tax." [Acts of 1961, ch. 11, §27, p. 34, being Burns' (1961 Repl.), §68-1225.]

It is unquestioned that the exception contained in the above constitutional provision specifying an ex-

emption from taxation ". . . for municipal . . . purposes, as may be specially exempted by law" has been construed to include public or governmental purpose as distinguished from private. *City of Louisville* v. *Babb* (C. C. 1935), 75 F. 2d 162, 166, cert. den., 295 U. S. 738, 55 S. Ct. 650, 79 L. Ed. 1686.

Appellant's argument however is that the construction of a port is not within the scope of a public or a governmental purpose under the time honored meaning of such terms.

Section 27 of the Indiana Port Commission Act, on the contrary, states in this respect that:

> "The exercise of the powers granted by this act will be in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of a port project by the commission will constitute the performance of essential governmental functions, the commission shall not be required to pay any taxes . . . ." [Acts of 1961, ch. 11, §27, *supra.* ]

The same question raised here by appellant was decided adversely to his contention in *Ennis* v. *State Highway Commission* (1952), *supra*, 231 Ind. 311, 329, 108 N. E. 2d 687, 696, where this Court stated:

> ". . . Since we have found this not to be a private corporation, this contention is without merit. . . ."

Similar property and bonds involved in the case of *Edwards* v. *Housing Authority of City of Muncie* (1939), 215 Ind. 330, 337, 19 N. E. 2d 741, 744, were likewise held by this Court to be properly exempted from taxation.

Other jurisdictions have held that the property of port authorities, and the interest on port authority obligations are properly exempt from taxation. *Bush Terminal Co.* v. *City of New York* (1940), 282 N. Y. 306, 26 N. E. 2d 269; *Commissioner of Internal Rev.* v. *Shamberg's Estate* (1944), 144 F. 2d 998, cert. den. (1945), 323 U. S. 792, 65 S. Ct. 433, 89 L. Ed. 631.

It follows that appellant's contention is completely without merit.

*Ninth.* Appellant contends the Act constitutes an improper delegation of legislative authority.

Appellant cites Art. 4, §1 of the Indiana Constitution providing:

"The Legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives. The style of every law shall be: 'Be it enacted by the General Assembly of the State of Indiana'; and no law shall be enacted, except by bill."

Appellant asserts the Indiana Port Commission Act violates the above constitutional provision in the following respects:

"(a) No reasonable standards are prescribed for the selection of a site for such port;

"(b) The power granted in Section 16 of the Act to enter into trust agreements guaranteeing certain actions has the effect of binding future sessions of the Indiana General Assembly;

"(c) No reasonable standard is prescribed for determining how and when the funds purportedly transferred to the Commission are to be expended; and

"(d) The power granted in Section 10 of the Act to transfer and convey land acquired in the

name of the State constitutes an improper author-
ization for the disposition of public property."

In regard to (a) the portion of the Indiana Port
Commission Act providing for the selection of a site
for the port appears as follows (§1 of the Act) :

" . . . the Indiana Port Commission is hereby
authorized and empowered to construct, maintain
and operate, in cooperation with the federal gov-
ernment, or otherwise, *at such location on Lake
Michigan* as shall be approved by the governor,
a public port, with terminal facilities and traffic
exchange points for all forms of transportation,
. . . ." (Emphasis added.) [Acts of 1961, ch. 11,
§1, p. 14, *supra,* being Burns' (1961 Repl.),
§68-1201.]

It is of course true that the General Assembly may
not delegate discretionary duties to administrative
officers without imposing reasonable standards
under which such discretion is to be exercised.
See: *Kryder* v. *State* (1938), 214 Ind. 419,
425, 15 N. E. 2d 386, 389, appeal dismissed 305 U. S.
570, 59 S. Ct. 154, 83 L. Ed. 359.

However, when the Legislature defines its policy
and prescribes standards, it may leave to executive
boards and officers the determination of facts
in order to apply the law, and in connection
therewith the right of such boards to make
reasonable rules and regulations has been recognized
by innumerable decisions. See: *Financial Aid Cor-
poration* v. *Wallace* (1939), 216 Ind. 114, 119, 23
N. E. 2d 472, 474, 125 A. L. R. 736, 740.

The purpose of the Indiana Port Commission Act
is clearly expressed in the title and first section where
it is said the Act is adopted in order to promote the
agricultural, industrial and commercial development

of the state and to accommodate water, rail, truck and airborne transportation. The selection of the site is subject to the approval of the Governor. The location of the port must be such that it will support the project, and the Commission must consider these points in making the selection.

After giving due consideration to the provisions and content of the statute as above set forth, and considering the specific nature of the purposes to be accomplished by this Act, and the fact that the selection of the site is subject to the approval of the Governor, it seems to us that the standards prescribed are as specific and certain as the circumstances of the subject matter of the Act will permit. See: *Ennis* v. *State Highway Commission* (1952), *supra*, 231 Ind. 311, 326, 108 N. E. 2d 687, 694.

With reference to (b) §16 of the Act[5] which is attacked by appellant as binding future sessions of

---

5. "In the discretion of the commission any bonds issued under the provisions of this act may be secured by a trust agreement by and between the commission and a corporate trustee, which may be any trust company or bank having the powers of a trust company within the state. Any resolution adopted by the commission providing for the issuance of bonds and any trust agreement pursuant to which such bonds are issued may pledge or assign all or any portion of the revenues received or to be received by the commission except such part as may be necessary to pay the cost of the commission's administrative expenses, operation, maintenance and repair and to provide reserves therefor and depreciation reserves required by any bond resolution adopted or trust agreement executed by the commission, but the commission shall not convey or mortgage any port, port project or any part thereof. In authorizing the issuance of bonds for any particular port project undertaken in connection with the development of the port, the commission may limit the amount of such bonds that may be issued as a first lien and charge against the revenues pledged to the payment of such bonds or the commission may authorize the issuance from time to time thereafter of additional bonds secured by the same lien to provide funds for the completion of the port project on account of which the original bonds were issued, or to provide funds to pay the cost of additional port projects undertaken in connection with the development of the port, or for both such purposes. Such additional bonds shall be issued on such terms

the General Assembly, in fact merely authorizes the Commission, in its discretion, to secure any bonds issued by a trust agreement by and between the Commission and a corporate trustee. Any resolution for the issuance of bonds, and any trust agreement, may pledge or assign all or any portion of the revenues

and conditions as may be provided in the bond resolution or resolutions adopted by the commission and in the trust agreement or any agreement supplemental thereto and may be secured equally and ratably without preference, priority or distinction with the original issue of bonds or may be made junior thereto. Any pledge or assignment made by the commission pursuant hereto shall be valid and binding from the time that the pledge or assignment is made and the revenues so pledged and thereafter received by the commission shall immediately be subject to the lien of such pledge or assignment without physical delivery thereof or further act. The lien of such pledge or assignment shall be valid and binding against all parties having claims of any kind in tort, contract or otherwise against the commission irrespective of whether such parties have notice thereof. Neither the resolution nor any trust agreement by which a pledge is created or assignment made need be filed or recorded except in the records of the commission. Any such trust agreement or any resolution providing for the issuance of such bonds may contain such provisions for protecting and enforcing the rights and remedies of the bondholders as may be reasonable and proper and not in violation of law, including, but not limited to, covenants setting forth the duties of the commission in relation to the acquisition of property and the construction, improvement, maintenance, repair, operation and insurance of the port project in connection with which such bonds shall have been authorized, the rates of fees, tolls, rentals or other charges, to be collected for the use of the project, and the custody, safeguarding and application of all moneys, and provisions for the employment of consulting engineers in connection with the construction or operation of such project. It shall be lawful for any bank or trust company incorporated under the laws of the state which may act as depository of the proceeds of bonds or other funds of the commission, to furnish such indemnifying bonds or to pledge such securities as may be required by the commission. Any such trust agreement may set forth the rights and remedies of the bondholders and of the trustee, and may restrict the individual right of action by bondholders as is customary in trust agreements or trust indentures securing bonds or debentures of private corporations. In addition to the foregoing, any such trust agreement may contain such other provisions as the commission may deem reasonable and proper for the security of the bondholders. All expenses incurred in carrying out the provisions of any such trust agreement may be treated as a part of the cost of the operation of the port project." [Acts 1961, ch. 11, §16, p. 29, being Burns' (1962 Repl.), §68-1216.]

received or to be received, except as provided in the section, and the Commission cannot convey or mortgage any port or port project, or part thereof. The trust agreement and resolution may contain such provisions for protecting and enforcing the rights and remedies of the bondholders and of the trustee as may be reasonable and not unlawful. This section is virtually identical to §13 of the Toll Road Commission Act[6] authorizing the Toll Road Commission to enter into a trust agreement.

There is no attempt here to bind the Legislature in any way. It will have no responsibilities under the trust agreement, which binds only the ██ Commission, a separate public corporate body, and the trustee, for the benefit of holders of Port Commission bonds. The Act creating the Port Commission will be subject to amendment or action by future sessions of the Legislature, if the public interest seems to require a change. See: *Opinion of the Justices* (1956), 334 Mass. 721, 136 N. E. 2d 223.

In relation to (c) wherein appellant contends no reasonable standard is prescribed for determining how and when the funds purportedly transferred to the Commission are to be expended, we refer to §12 of the Act, creating the Indiana Port Fund, to be made up of funds appropriated to the Commission which provides:

" . . . Expenditures from said fund shall be made only for the acquisition of land including lands under water and riparian rights, or options for the purchase of such land for a port site, and incidental expenses incurred in connection with such acquisition, and for studies in connection with the port project, and including adminis-

6. Acts of 1951, ch. 281, §13, p. 862, being Burns' (1961 Supp.), §36-3213.

trative expenses of the commission. Said fund shall be held in the name of the Indiana Port Commission, shall be administered by the commission, and all expenditures therefrom shall be made by the commission, subject, however, to the approval by governor and the state budget committee of all expenditures of moneys advanced to said fund by the State of Indiana. Requests for such approval shall be made in such form as shall be prescribed by the budget committee, but expenditures for acquisition of land including lands under water and riparian rights, or options for the purchase of such land, shall be specifically requested and approved as to the land to be acquired and the amount to be expended. No transfers from said fund to any other fund of the state shall be made except pursuant to legislative action. . . ." [Acts of 1961, ch. 11, §12, p. 26, *supra*, being Burns' (1961 Repl.), §68-1210.]

It seems to us amply clear that the foregoing section of the Act fixes reasonable standards for expending funds by the Commission.

As regards (d) wherein appellant makes the final charge here that the power granted in §10 of the Act constitutes an improper authorization for the disposition of public property, it will be noted that §10 provides:

" . . . the commission is hereby further authorized and empowered to sell, transfer and convey any such land or any interest therein so acquired, or any portion thereof, when the same shall no longer be needed for such purposes; and it is further authorized and empowered to transfer and convey any such lands or interests therein as may be necessary or convenient for the construction and operation of any port or port project, or as otherwise required under the provisions of this act: . . . ." [Acts of 1961, ch. 11, §10, p. 24, being Burns' (1961 Repl.), §68-1206.]

These provisions are very similar to §§5(i) and 7 of the Toll Road Act as amended. Acts 1959, ch. 285, §3,

p. 700, 703; Acts 1957, ch. 273, §2, p. 639, 642, being Burns' §§36-3205 and 36-3207 (1961 Supp.).

In addition, §10 of the Act requires that no such sale shall be made without the approval of the Governor first obtained and at not less than the appraised value established by three independent appraisers appointed by the Governor. The deeds of conveyance are also subject to the approval of the Governor.

There is nothing in the Constitution to prevent the Legislature from prescribing the procedure for the sale of state lands. In this instance the Legislature has provided the Port Commission may handle this matter directly, with the approval of the Governor, when the land or interests therein are no longer needed for port purposes.

In summary, as to appellant's ninth contention, it appears that in the grants made to the Port Commission, the Legislature has prescribed reasonable standards, having in mind the necessity of granting sufficient discretion to meet new difficulties, and at the same time, to inform as to the end to be considered and the result to be reached in each instance. The nature of the job to be performed and the supervision specified are sufficient to define the authority of the Commission within constitutional limits. It is our opinion the Act does not constitute an improper delegation of legislative power in violation of Art. 4, §1 of the Indiana Constitution.

*Tenth.* This contention of appellant is that the Act is a revenue-raising bill and should have originated in the House of Representatives.

Appellant states the Act provides for the operation and maintenance of a port from the proceeds of tolls, rentals, fees and other charges to be levied by the

Commission against the users of the port; that the primary purpose of the Act is to raise revenue contrary to Art. 4, §17 of the Indiana Constitution providing:

"Bills may originate in either House, . . . except that bills for raising revenue shall originate in the House of Representatives."

Appellant's contention is, however, not well taken for this Court has held in numerous decisions that the term "raising revenue" used in Art. 4, §17, supra, is confined to acts to levy taxes, in the strict sense of the word, and does not apply to other purposes which may incidentally create revenue. Ennis v. State Highway Commission (1952), supra, 231 Ind. 311, 322, 108 N. E. 2d 687, 692; Stith Petroleum Co. v. Dept. of Audit and Control (1937), 211 Ind. 400, 404, 5 N. E. 2d 517, 519; Andrews v. City of Marion (1943), 221 Ind. 422, 430, 47 N. E. 2d 968, 971; Rosencranz v. City of Evansville (1924), 194 Ind. 499, 505, 143 N. E. 593, 596.

The purpose of the Act in question is not to levy taxes but, as set out in the statute, is to promote the agricultural, industrial and commercial development of the state and to provide for the general welfare by the construction and operation of a modern port on Lake Michigan.

As was the case with the Toll Road Act, supra, nowhere in the instant statute is there any provision for the assessment of taxes. The payment of a tax is compulsory and not optional, and it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens alike. Yourison, d.b.a. v. State of Del., p.b.r. (1927), 33 Del. 577, 579, 140 A. 691,

692; *Northern Counties Trust* v. *Sears* (1895), 30 Ore. 388, 401, 41 P. 931, 935, 35 L. R. A. 188, 194.

Under this statute the tolls, rentals, and fees are to be paid by the users of the port or its facilities, but this is merely compensation for the use of the property and the improvements of the port and can in no sense be considered a tax.

It follows that the Indiana Port Commission Act is not a revenue raising act within the meaning of Art. 4, §17, which would require it to be introduced in the Indiana House of Representatives.

*Eleventh.* Appellant states that the Act provides for the unauthorized utilization of income from a public work contrary to Art. 10, §2 of the Indiana Constitution providing:

> "All [of] the revenues derived from the sale of any of the public works belonging to the State, and from the net annual income thereof, and any surplus that may, at any time, remain in the Treasury, derived from taxation for general State purposes, after the payment of the ordinary expenses of the government, and of the interest on bonds of the State, other than Bank bonds, shall be annually applied, under the direction of the General Assembly, to the payment of the principal of the Public Debt."

Section 17 of the Indiana Port Commission Act authorizes the Commission to fix, charge and collect fees, tolls, rentals and other charges for the use of the port and its facilities and services, and provides the aggregate shall provide sufficient revenues to pay the cost of operation, etc., including the administration expense of the Commission, the interest and principal on bonds financing the project and reserves. Said §17 further provides:

" . . . After such bonds have been fully paid and discharged and all obligations under any trust agreement securing the same have been performed or satisfied, any remaining surplus *net revenues* and all surplus *net revenues* thereafter derived from the operation of such port *shall be* paid into the state general fund." (Emphasis added.) [Acts of 1961, ch. 11, §17, p. 31, being Burns' (1961 Repl.), §68-1217.]

It will be noted that Art. 10, §2 of the Indiana Constitution for our purposes here only refers to ". . . the net annual income . . ." of the public works ▆ belonging to the state. The generally accepted definition of the term ". . . net annual income . . ." is the amount obtained by deducting from the gross receipts for the year all the expenses, charges, outlays and losses incurred in carrying on the business; in other words, it is the amount which remains clear of, or free from, all charges and deductions. See: Ballentine's Law Dictionary, p. 866; Webster's Third New International Dictionary, p. 1520.

The Toll Road Act, *supra*, containing similar provisions to those in question here was held by this Court not to provide for an improper disposition of the *net income* from any toll road project contrary to the Indiana Constitution. See: *Ennis* v. *State Highway Commission* (1952), *supra*, 231 Ind. 311, 332, 108 N. E. 2d 687, 697. The Act there, as here, provided for the paying of all expenses and costs of the project, including the bonds.

Therefore, beyond question, in determining its net annual income, the Port Commission is entitled to deduct from its gross annual income all costs of operating, maintaining and repairing the facility. The repayment of the cost of the money borrowed to finance the project is also a legitimate cost to the

Commission, which can be deducted before determining net income. Under the terms of the Act, any remaining surplus net revenues, after the payment of these expenses, are to be paid into the State General Fund.

It is apparent from the foregoing that §17 of the Indiana Port Commission Act, *supra,* does not violate Art. 10, §2 of the Constitution of Indiana.

*Twelfth, Thirteenth.* Here appellant contends the Act violates the Fourteenth Amendment to the U. S. Constitution by infringing upon the rights of due process and equal protection.

Section 8 of the Act here complained of provides:

". . . Whenever the commission shall determine that it is necessary that any such public utility facilities which now are, or hereafter may be, located in, on, along, over or under any such port or port project should be relocated, or should be removed from such port or port project, the public utility owning or operating such facilities shall relocate or remove the same in accordance with the order of the commission: . . . ." [Acts of 1961, ch. 11, §8, p. 22, 23, *supra,* being Burns' (1961 Repl.), §68-1209.]

Although appellant, who challenges this provision, has not shown he would be affected by the exercise of the authority granted under this section, as his contention pertained solely to the rights of public utilities, we shall consider the question to dispose of it finally.

It will be observed that §8 of the Act after providing the public utility owning or operating such facilities shall relocate or remove them in accordance with the Commission's order, provides further:

" . . . Provided, however, That the cost and expenses of such relocation or removal including the cost of installing such facilities in a new. location or new locations, and the cost of any lands, or any rights or interests in lands, and any other rights, acquired to accomplish such relocation or removal, shall be ascertained and paid by the commission as a part of the cost of such port or port project, excepting, however, cases in which such equipment or facilities are located within the limits of existing highways or public thoroughfares being constructed, reconstructed or improved under the provisions of this act. In case of any such relocation or removal of facilities, the public utility owning or operating the same, its successors or assigns, may maintain and operate such facilities, with the necessary appurtenances, in the new location or new locations, for as long a period, and upon the same terms and conditions, as it had the right to maintain and operate such facilities in their former location or locations subject, however, to the state's right of regulation under its police powers." [Acts of 1961, ch. 11, §8, *supra.*]

Section 11 further protects the rights of public utilities, as follows:

" . . . nothing herein shall authorize the commission to take or disturb property or facilities belonging to any public utility or to a common carrier engaged in interstate commerce, which property or facilities are required for the proper and convenient operation of such public utility or common carrier, unless provision is made for the restoration, relocation or duplication of such property or facilities elsewhere at the sole cost of the commission excepting however, cases in which such equipment or facilities are located within the limits of existing highways or public thoroughfares." [Acts of 1961, ch. 11, §11, p. 25, being Burns' (1961 Repl.), §68-1207.]

Also, §20 of the Act provides:

" . . . All public or private property damaged or destroyed in carrying out the powers granted

> by this act shall be restored or repaired and placed in its original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act." [Acts of 1961, ch. 11, §20, p. 32, being Burns' (1961 Repl.), §68-1220.]

It appears that the foregoing sections, which are substantially the same as those incorporated in the Toll Road Act, *supra*, have taken extraordinary measures to protect the rights of public utilities. The Commission is authorized to condemn or order property removed or relocated, but in that event full and adequate relief to the injured party is provided. Likewise, any discretionary order of the Commission, directly and substantially affecting the lives and property of the public, is subject to judicial review, regardless of whether the Act contains a provision to that effect or not. *State ex rel. Smitherman et al.* v. *Davis, etc., et al.* (1958), 238 Ind. 563, 569, 151 N. E. 2d 495, 497.

> It follows that §8 of the Act, if enforced, will not deprive a public utility of its private property without due process of law, nor will such utility thereby be denied equal protection of the laws.

*Fourteenth.* Appellant lastly asserts the Act is unconstitutional because it is not plainly worded contrary to Art. 4, §20 of the Indiana Constitution, providing:

> "Every act and joint resolution shall be plainly worded, avoiding, as far as practicable, the use of technical terms."

Appellant's contention here is that a clear reading of the Act discloses that it is unartfully drawn, cumbersome and unintelligible, so as to be a clear violation of this constitutional mandate. However,

appellant does not set out any specific instances wherein said Act is subject to these alleged infirmities, nor does he cite any authorities in support of his position. See: Rule 2-17 (e) of this Court.

On the contrary, in our judgment the Act is drafted in a manner that imports a reasonable degree of clarity and understanding. The intention of the Legislature is readily discernable and technical terms in general have been avoided. The purpose and content of the Act can be understood by persons reading the Act. We find no substance in this contention of appellant.

We have carefully reviewed in this opinion the fourteen respective contentions of unconstitutionality asserted by appellant with regard to the Indiana Port Commission Act, and it is our considered judgment that said Act is not subject to any of the infirmities urged by appellant, but is in accord with the provisions of the Indiana and United States Constitutions as to each of the contentions made by appellant.

The judgment of the trial court is affirmed.

Achor, C. J., and Arterburn and Bobbitt, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 179 N. E. 2d 727.